IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MARY J. SPENCER,**

    **Plaintiff,**

vs.                                                                                                      **Civ. No. 04-876 RHS**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

    1.  This matter comes before the Court on Plaintiff's Motion to Reverse and Remand Administrative Agency Decision, filed December 21, 2004 **[Doc. 7]**.  Plaintiff alleges a disability commencing on May 1, 1999 due to Sjögren's syndrome, rheumatoid arthritis, gout, allergies, osteoarthritis, fibromyalgia, depression and an inability to sleep.  (Tr.[1] at 55, 71.)  Plaintiff asserts that "severe pain most of the time, tir[e]dness, and [eye] trouble" limit her ability to work.  (Tr. at 71.)  Plaintiff also alleges that "[s]tanding, sitting or physical activity causes pain."  (Id.)  Plaintiff's date of birth is June 9, 1951.  (Tr. at 55.)  She completed one year of college and has worked in the past as a cook/assistant manager in a restaurant and as a receptionist/secretary.  (Tr. at 77, 99.)

    2.  Plaintiff apparently filed her application for disability insurance benefits sometime in April 2002.  (Tr. at 55-57.)[2]  After conducting a hearing on November 20, 2003, the Commissioner's Administrative Law Judge ("ALJ") issued a decision on February 23, 2004

---

    [1]Tr. = Administrative Transcript.

    [2]"April 22, 2002" is printed or typewritten in the upper right-hand corner on the first page of Plaintiff's application.  The phrase "52402 prot to 4/9/02" is handwritten underneath this date.

denying Plaintiff's application. (Tr. at 21-24.) On May 13, 2004, the Appeals Council denied Plaintiff's request for a review, thus rendering the ALJ's decision the final decision of the Commissioner. (Tr. at 14.)

3. Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Plaintiff alleges the following errors: (1) The ALJ erred by failing to give controlling weight to the opinions of Dr. Jose Del Giudice; (2) The ALJ improperly substituted his own lay opinions for those of Dr. Giudice; and (3) The ALJ erred in finding that Plaintiff's condition did not meet Listing § 14.09.

4. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. §423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

5. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; and (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988). Here, the ALJ concluded that Plaintiff was not disabled at step four, based on his finding she "has been able to

return to her past relevant work as a receptionist/secretary." (Tr. at 24.)  The ALJ did not reach step five of the sequential evaluation process.

6.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson, 987 F.2d at 1487 (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

>  ***First and Second Alleged Errors -    whether the ALJ  properly considered the opinions of Plaintiff's treating physician***

7.  Plaintiff alleges that the ALJ erred in not giving controlling weight to the opinions of Jose Del Giudice, M.D.  Plaintiff also contends that the ALJ improperly substituted his lay opinions for those of Dr. Giudice "by only addressing negative symptoms, and not positive symptoms."  (Plaintiff's Memorandum Brief in Support of Motion at 13 **[Doc. 8]**.)

8.  On January 5, 2003, Dr. Giudice completed a questionnaire, apparently at the request of Plaintiff's counsel, "concerning . . . [Plaintiff's] impairments."[3]  (Tr. at 269-73.)  In this questionnaire, Dr. Giudice indicated, *inter alia*, that:

> Plaintiff's condition "meet[s] the American College of Rheumatology criteria for fibromyalgia" and her diagnoses include rheumatoid arthritis and Sjögren's Syndrome; Plaintiff's "prognosis [is] guarded"; Plaintiff's symptoms include multiple tender points, chronic fatigue, headaches, numbness and tingling, sicca symptoms and depression; Plaintiff's pain is located bilaterally in her shoulders, hands/fingers, hips and knees/ankles/feet, and is precipitated by changing weather, fatigue, movement/overuse and

---

[3]Dr. Giudice indicated that "the clinical findings, laboratory and test results [which] show . . . [Plaintiff's] medical impairments" include inflammatory polysynovitis of small/large joints, fatigue, morning stiffness and sicca complex.  (Tr. at 269.)  Synovitis is "[i]nflammation of the synovial membrane, the lining of the joint."  http://www.medterms.com (citing 1996-2005 MedicineNet, Inc.).  "Sicca syndrome" is "[a]n autoimmune disease, also known as Sjogren syndrome, that classically combines dry eyes, dry mouth, and another disease of connective tissue such as rheumatoid arthritis (most common), lupus, scleroderma or polymyositis."  Id.

stress; Plaintiff's "pain or other symptoms [are frequently[4]] severe enough to interfere with [the] attention and concentration needed to perform even simple work tasks"; Plaintiff is "[i]ncapable of even 'low stress' jobs"; Plaintiff "can sit and stand/walk [less than 2 hours] in an 8-hour working day"; Plaintiff can "never . . . lift and carry [10 lbs.] in a competitive work situation" and can "rarely" lift and carry "[l]ess than 10 lbs."; Plaintiff has "significant limitations in doing repetitive reaching, handling or fingering"; and Plaintiff "is likely to be absent from work as a result of . . . [her] impairments or treatment . . . [m]ore than four days per month."

(Tr. at 269-73.)

9.  In his decision, the ALJ found, *inter alia*, that Plaintiff "had a residual functional capacity ["RFC"] for at least a wide range light work . . . . [and] can lift 10 pounds frequently and 20 pounds occasionally.  She can sit, stand or walk for up to 6 hours in an 8 hour day."  (Tr. at 23.)  The ALJ specifically referred to a Physical Residual Functional Capacity Assessment ("FCA") completed by a State agency physician who "concluded that . . . [Plaintiff] retained the capacity for light work."  (Id. (citing 216).)[5]  Thus, Dr. Giudice's opinions conflict with both the opinions of the State agency physician(s) and the findings of the ALJ regarding Plaintiff's limitations and ability to work.[6]

10.  The ALJ's evaluation of Dr. Giudice's opinions contained in the questionnaire is set forth below, in its entirety:

---

[4]The questionnaire defines "frequently" to mean "34% to 66% of an 8-hour working day." (Tr. at 271.)

[5]The State agency physician's FCA is dated January 3, 2003, two days before Dr. Giudice completed his questionnaire.  (Tr. at 223.)  Thus, the agency physician(s) did not review Dr. Giudice's opinions regarding Plaintiff's limitations prior to reaching a determination that Plaintiff was capable of light work.  (Tr. at 222) (noting that "treating . . . source statement(s) regarding the claimant's physical capacities [were not] in [the] file".)

[6]For example, while the State agency physician stated that Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently (tr. at 217), Dr. Giudice found that Plaintiff could never lift and carry10 pounds (tr. at 272.).

4

> [Dr. Giudice] states in this form that the claimant has inflammatory polysynovitis of the small and large joints, fatigue and morning stiffness. However, in his treatment notes he finds no objective swelling. [228] He also states that she denied morning stiffness lasting more than 20 minutes. [224] He states that she cannot tolerate even low stress work, but this is without any objective basis. I give more credence to the doctor's contemporaneous examination notes and thus give little weight to the assessment prepared for this litigation. [269]

(Tr. at 23-24 (internal citations omitted).)

11. The parties do not dispute that Dr. Giudice is a treating physician.[7] According to "the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). The evaluation of a treating physician's opinion is a two step process.

12. First, the ALJ must determine if the opinion is entitled to controlling weight. Id. at 1119 (citing Watkins v. Barnhart, 350 F.3d 1297, 1200 (10th Cir. 2003)). This step requires the ALJ to "first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Id. If the opinion is well-supported, the ALJ "must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

13. Second, "[e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R.] § 404.1527." Id. (citations and internal quotation marks

---

[7]Dr. Giudice is associated with Arthritis and Osteoporosis Associates, LLP. (Tr. at 248.) Dr. James Purpura, D.O. apparently referred Plaintiff to Dr. Giudice in January of 2002. (Id.) Plaintiff had visited Dr. Giudice approximately seven times prior to the administrative hearing in November of 2002.

omitted). These factors include: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship, including treatment provided and the kind of examination / testing performed; (3) degree to which the physician's opinion is supported by the relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist; and (6) other factors which tend to support or contradict the opinion. Id. (citation omitted).

14. Additionally, the ALJ "must give good reasons . . . for the weight assigned to a treating physician's opinion[,] that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Langley, 373 F.3d at 1119 (citation and internal quotation marks omitted). In rejecting a treating physician's assessment, the ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his . . . own credibility judgments, speculation or lay opinion." Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)).

15. The ALJ's analysis of Dr. Giudice's opinion is deficient is several respects. First, while it is apparent that the ALJ did not assign controlling weight to Dr. Giudice's opinion, the ALJ "never expressly stated that he was not affording it controlling weight, nor did he articulate a legitimate reason for not doing so." Robinson, 366 F.3d at 1083. The ALJ's conclusion that Dr. Giudice's opinion regarding Plaintiff's ability to tolerate low stress work lacked any objective basis "triggered the ALJ's duty to seek further development of the record before rejecting the opinion." Id. at 1084 (explaining that where a treating physician fails "to provide sufficient

6

support for his conclusions about . . . [Plaintiff's] limitations . . . [or] the effect of those limitations on her ability to work," the ALJ "should . . . contact[] [the treating physician] for clarification of his opinion before rejecting it"). However, nothing in the record indicates that the ALJ did so.

16. Moreover, even assuming that Dr. Giudice's opinions were not entitled to controlling weight, the ALJ failed to provide a legitimate explanation for how he assessed the weight given the opinions. In choosing to discount Dr. Giudice's opinions, the ALJ failed to address most, if not all, of the factors listed in 20 C.F.R. § 404.1527 for weighing a treating source opinion. See, e.g., Robinson, 366 F.3d at 1083 (quoting Watkins, 350 F.3d at 1301) ("We cannot simply presume the ALJ applied the correct legal standards in considering [Dr. Giudice's] opinion.").

17. The ALJ stated that he gave "more credence to . . . [Dr. Giudice's] contemporaneous examination notes and thus g[a]ve little weight to the assessment prepared for this litigation." (Tr. at 23-24.) However, the ALJ did not explain why he found Dr. Giudice's examination notes more "credible" than those contained in the questionnaire.[8] Moreover, a presumption that Dr. Giudice's opinions are less credible solely because they are "prepared for litigation" is speculative and improper. See also Langley, 373 F.3d at 1121 (citing McGoffin, 288 F.3d at 1253) (noting that the United States Court of Appeals for the Tenth Circuit "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician").

---

[8] The ALJ compared some of Dr. Giudice's questionnaire opinions with some of Dr. Giudice's prior treatment notes. (Tr. at 23.) However, it is not at all clear what this comparison was intended to show. The ALJ did not conclude that Dr. Giudice's treatment notes contradict his questionnaire opinions; nor is any inconsistency apparent to the Court.

18. Finally, although the ALJ apparently rejected Dr. Giudice's opinions in favor of the State agency physician's opinions regarding Plaintiff's limitations, he did not identify the relative weight of each physician's opinion, nor explain the reasons for that weight. This constituted legal error. See Robinson, 366 F.3d at 1084 (finding the ALJ erred in "rejecting the treating-physician opinion . . . in favor of the non-examining, consulting-physician opinion . . . absent a legally sufficient explanation"). Because the ALJ provided an inadequate explanation for the weight he afforded Dr. Giudice's opinion, the Court is unable to properly review the ALJ's decision. See, e.g., Watkins, 350 F.3d at 1300 (quoting Social Security Ruling 96-2p) (stating that the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the . . . [ALJ] gave to the treating source's medical opinion and the reasons for that weight").

19. The Court finds that the ALJ failed to apply the correct legal standards in evaluating a treating physician's opinion. Accordingly, this matter should be remanded for further proceedings.

### *Third Alleged Error - whether Plaintiff's condition meets Listing § 14.09*

20. The ALJ's failure to properly evaluate Dr. Giudice's opinions potentially affects his determination of whether Plaintiff's condition meets or equals a listed impairment.[9] Thus, the Court need "not reach the remaining issues raised by . . . [Plaintiff] because they may be affected

---

[9] An evaluation of whether a claimant's condition meets a listed impairment is based on the same types of information used elsewhere in the evaluation process. For example, in assessing symptoms, the Commissioner considers "all of the available evidence, including . . . medical history, the medical signs and laboratory findings and statements about how . . . symptoms affect [a claimant]." 20 CFR § 404.1529(a). The ALJ then determines the extent to which alleged functional limitations and restrictions due to pain and other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how the symptoms affect claimant's ability to work. Id.

by the ALJ's resolution of this case on remand." Robinson, 366 F.3d at 1084 (finding that the failure to properly evaluate the treating physician's opinion undermined the ALJ's assessment of claimant's limitations).

21. It is not clear whether, or to what extent, a re-evaluation of Dr. Giudice's opinions will influence the ALJ's findings regarding Plaintiff's abilities and limitations. However, it is not the Court's role to "reweigh the evidence or try the issues de novo or substitute its judgment for that of the [ALJ]." Trimiar v. Sullivan, 966 F.2d 1326, 1328 (10th Cir. 1992). Accordingly, the ALJ will proceed as necessary in light of any new findings.

WHEREFORE,

IT IS ORDERED that Plaintiff's Motion to Reverse and Remand Administrative Agency Decision **[Doc. 7]** is GRANTED, and this matter is remanded for additional proceedings consistent with this opinion, to include:

(1)     a re-evaluation of the medical opinions of Dr. Jose Del Giudice;

(2)     additional proceedings, as necessary, in light of any new or changed findings following the re-evaluation of Dr. Giudice's opinions, including a determination of whether Plaintiff's condition meets or equals a listed impairment.

_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE